IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiffs,<br>vs.<br><br>KODY DICKES,<br>Defendant. | **4:25CR3045**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on Defendant Kody Dickes' motion to suppress. Filing No. 48. Defendant moves to suppress statements made to law enforcement on October 23, 2024, alleging they were obtained in violation of *Miranda*.[1] The Court held a hearing on the pending motion on May 27, 2026.[2] Filing No. 56. The Court ordered a transcript of the hearing and deemed the motions submitted upon receipt of the transcript. A transcript of the proceedings has been filed and the matter is now ripe for disposition. Filing No. 61. For the reasons discussed below, the undersigned recommends the Court deny Defendant's motion.

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] At the time of the hearing, Defendant clarified that he is only pursuing suppression based on an alleged *Miranda* violation and he is not arguing the statement was involuntary under the Fifth Amendment's Due Process Clause. Filing No. 61 at 3. Moreover, Defendant does not brief the issue of voluntariness and, as the government points out, this constitutes a waiver of the argument pursuant to this Court's local rules. Neb. Crim. R. 12.3(b)(1).

## STATEMENT OF FACTS

After hearing the testimony of the witnesses and reviewing the exhibits submitted at the hearing, the undersigned finds the following facts are credible. On October 23, 2024, a search warrant was served at Defendant's residence pertaining to an investigation into possession of child sexual abuse material. Filing No. 61 at 9. Ten to twelve law enforcement officers arrived at Defendant's residence where he lived with his wife and two children. Filing No. 61 at 9-13. Upon arrival, a local law enforcement officer contacted Defendant. Filing No. 61 at 12; Filing No. 58, Exhibit 3 at 1:45-2:20. Buckley Wright, a Special Agent with the Federal Bureau of Investigation ("FBI"), arrived on the scene shortly after local law enforcement. Filing No. 61 at 12. SA Wright asked Defendant to step away from the residence for privacy and to explain the situation. Filing No. 58, Exhibit 2 at 5:20-5:45. Defendant followed SA Wright out onto the street near SA Wright's unmarked vehicle. Filing No. 61 at 12. SA Wright asked Defendant if he would be willing to speak with SA Wright to which Defendant agreed. Filing No. 61 at 13; Filing No. 58, Exhibit 2 at 6:18-7:00. SA Wright asked Defendant to have a seat in the front passenger seat of his vehicle to conduct the interview. Filing No. 61 at 14. He explained they were going to the government issued vehicle for privacy. Filing No. 58, Exhibit 2 at 6:18-7:00. SA Wright told Defendant to let him know at any time if he was getting hot or needed the temperature adjusted in the car. SA Wright was positioned in the front driver's seat, Defendant was in the front passenger seat, and Douglas County Sheriff's Deputy Chad Miller was in the seat behind Defendant. Filing No. 61 at 32-33; Filing No. 58, Exhibit 2 at 7:00.

To begin the interview SA Wright introduced himself and Deputy Miller. Filing No. 58, Exhibit 1 at 0:30. SA Wright told Defendant the questioning was voluntary, that he did not have to answer questions, and he was free to leave at any time. Filing No. 61 at 15; 29; Filing No. 58, Exhibit 1 at 1:00. Defendant confirmed he understood this. Filing No. 58, Exhibit 1 at 1:15. SA Wright advised Defendant that

it was not likely he would be arrested that evening and again that they were sitting in his vehicle for privacy and warmth. Filing No. 61 at 16; Filing No. 58, Exhibit 1 at 1:00. Defendant was not handcuffed or otherwise restrained, and the vehicle doors were unlocked. Filing No. 58, Exhibit 1 at 1:00. SA Wright did not threaten Defendant in any way and did not brandish his firearm. Filing No. 61 at 16; Filing No. 58, Exhibit 1. Similarly, Deputy Miller did not threaten Defendant in any way or use physical force against him. Filing No. 61 at 30; *see generally* Filing No. 58, Exhibit 1.

About thirty minutes into the interview, Defendant asked the officers "at what point during this conversation . . . do I need to possibly call a lawyer?" Filing No. 58, Exhibit 1 at 28:55. In response, law enforcement advised Defendant they could not provide legal advice but did tell him again that he was not under arrest. Defendant then asked if he would be arrested later that night. Filing No. 58, Exhibit 1 at 29:00. SA Wright advised Defendant he could not make any guarantees because it was possible something could result in him being arrested, i.e. finding a dead body, which would result in a discussion regarding whether he needed to be arrested. Filing No. 61 at 17; Filing No. 58, Exhibit 1 at 29:00. SA Wright further told Defendant it was unlikely he would be arrested that night due to any conversation regarding child pornography crimes. Filing No. 58, Exhibit 1 at 29:30. SA Wright then advised Defendant the conversation would continue to occur only if Defendant chose to do so. Filing No. 58, Exhibit 1 at 29:45. SA Wright and Deputy Miller then generally explained the investigation process. Filing No. 58, Exhibit 1 at 30:00-33:00. Thereafter, Defendant continued the conversation. Filing No. 58, Exhibit 1 at 33:15.

At approximately 1 hour and 17 minutes into the interview, Defendant indicated he wanted to go inside. Filing No. 58, Exhibit 1 at 1:17:00. SA Wright asked Defendant if that was his way of ending the interview. Filing No. 61 at 18; Filing No. 58, Exhibit 1 at 1:17:00. Defendant clarified that it was not what he

meant, and the interview continued. At various times throughout the interview Defendant downplayed his criminal conduct and refused questions or requests such as taking a polygraph test or answering questions about whether he was feeling suicidal. Filing No. 61 at 45-46; Filing No. 58, Exhibit 1 at 57:00; 1:16:00; 1:18:00. At around 1 hour and 35 minutes into the interview, Defendant asked officers for a cigarette. Filing No. 58, Exhibit 1 at 1:35:00. Shortly thereafter, the interview ended.

Defendant was not arrested at the end of the interview.[3] SA Wright and Deputy Miller testified that they did not threaten or use physical force against Defendant. Filing No. 61 at 19; 31. This is confirmed by the audio recording during which you hear law enforcement talking with Defendant in a calm and respectful tone. At no time do they raise their voices. In addition, at various portions of the interview, Defendant asks various questions, which law enforcement answers, and Defendant even led the direction of the conversation at times. Defendant did not appear under the influence of any substances or confused by the circumstances. Despite Defendant's testimony to the contrary,[4] he did not appear intimidated by the officers conducting the interview. *See generally*, Filing No. 58, Exhibit 1; Filing No. 61 at 31. Overall, the Court does not find Defendant's testimony to be credible.

---

[3] Defendant testifies that after the interview he was put in the back of a locked police car and was later escorted to his garage with several police officers where he was directed to stand in a specific spot and "cornered" by multiple officers. Filing No. 61 at 43. However, even if the Court found Defendant's statements credible, both of these interactions occurred *after* Defendant's interview. Moreover, Defendant did not testify that he made statements during these instances. There is no evidence, argument, or indication any statements, let alone interrogation, occurred during these alleged interactions.

[4] Defendant's brief argues that the law enforcement officer in the back seat, during the interview, "aggressively stated to the Defendant 'don't move your hands.'" Filing No. 49 at 3. As acknowledged at the hearing, a statement was made by SA Wright directing Defendant to remove his hands from his pockets for safety purposes prior to entering the vehicle and no such statement directing Defendant's movements was made while in the vehicle. Filing No. 61 at 49-50. This is confirmed by listening to the recordings and video received at the hearing.

## ANALYSIS

The Fifth Amendment requires officers to *Mirandize* a suspect before engaging in a custodial interrogation. *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021). "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement on the degree associated with formal arrest." *Id.* (quoting *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014)). "To determine whether a suspect was in custody, we ask whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *Id.* (quoting *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir 2016)).

In evaluating the totality of the circumstances, the Court considers six non-exhaustive "*Griffin*" factors: "(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning." *United States v. Johnson*, 39 F.4th 1047, 1051 (8th Cir. 2022) (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)).[5]

---

[5] Defendant's testimony at the suppression hearing primarily related to how he did not feel free to leave. However, "'Whether a suspect is in custody is an objective inquiry, where we assess both the circumstances surrounding the interrogation and whether a reasonable person would have felt at liberty to end the interrogation and leave.'" *United States v. Puckett*, 139 F.4th 730, 742 (8th Cir. 2025) (citing *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020)). For the reasons set forth herein, the undersigned finds that, after an objective inquiry – despite Defendant's testimony, which the undersigned

The first *Griffin* factor weighs heavily against finding that Defendant was in custody. Here, Defendant was told on at least three occasions that he was free to leave and/or not under arrest. Defendant confirmed he understood this. In fact, after Defendant asked to go inside, officers asked Defendant if that was his way of ending the interview. Defendant did not end the interview even after that interaction. *See* *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." and "[N]o governing precedent of the Supreme Court or [the Eighth Circuit] . . . holds that a person was in custody after being clearly advised of his freedom to leave or terminate questioning.").

With regard to the second *Griffin* factor, Defendant makes issue of the fact that the interview occurred in a government-issued vehicle with an officer in the driver's side, and one officer in the backseat, while Defendant was in the front, passenger seat. However, upon review of the evidence, this factor also weighs against a finding that Defendant was in custody. Though the interview occurred in a vehicle, the vehicle was unlocked and officers told Defendant he was free to leave at any time. Defendant was not handcuffed or restrained at any time. *See* *United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020) (finding defendant was not in custody for purposes of *Miranda* when he willingly sat in the front seat of a police vehicle during the execution of a search warrant, voluntary responded to questions in the vehicle, never requested to leave the vehicle, and presented no evidence he was restrained or acquiesced to questioning due to a coercive or police-dominated environment); *Puckett*, 139 F.4th at 743-44 (finding defendant was not in custody even though he was questioned while in the front seat of a patrol car). Additionally, though Defendant argues that he was "removed . . . from

---

does not find fully credible – a reasonable person would have felt free to end the interrogation and leave.

[his] house" and "eventually plac[ed] in the passenger seat o[f] a patrol van", there is no evidence law enforcement "placed" him in the vehicle or did anything to physically remove him or place him in the government-issued vehicle. Rather, upon request, Defendant followed SA Wright away from the house to his vehicle for privacy and thereafter the parties entered the van for warmth.

Third, though Defendant did not initiate contact with the authorities, he freely answered their questions. Though at one point Defendant asked "at what point during this conversation . . . do I need to possible call a lawyer?", he never asked for a lawyer to be present and there is no evidence Defendant ever asked to stop the interview. SA Wright even told Defendant the conversation would occur only if Defendant chose to continue the conversation. Defendant continued the conversation. Additionally, Defendant continued the conversation after SA Wright asked whether Defendant's request to go inside was his way of ending the interview. The voluntary nature of Defendant answering law enforcement's questions is bolstered by the fact that Defendant refused to take a polygraph test and, further, refused to answer certain questions during the interview regarding whether he was feeling suicidal. Defendant takes issue with the fact that the interview occurred while a search warrant was executed on Defendant's house and argues law enforcement was "aggressive in conducting the search." Filing No. 49 at 2. However, the fact that the interview occurred during the execution of a search warrant does not necessarily mean an individual is in custody. *See United States v. Giboney,* 863 F.3d 1022*,* 1028 (8th Cir. 2017) (finding Defendant was not in custody during the execution of a search warrant of his house even when a law enforcement official advised that Defendant "could not 'just take off and walk around the house' because of the ongoing execution of the search warrant."). This factor weighs against a finding that Defendant was in custody.

Fourth, there is no evidence law enforcement employed "strong arm tactics or deceptive stratagems" during questioning. At all times during the interview law

enforcement talked to Defendant in a calm and respectful tone. Fifth, while there were ten to twelve officers present to execute the search warrant, Defendant was only questioned by two investigators. In addition, law enforcement answered a number of questions posed by Defendant during the interview. Though "[a]ny warrant search is inherently police dominated", the Eighth Circuit has refused to find custody in circumstances where the atmosphere was much more police dominated. *See United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011); *Giboney,* 863 F.3d at 1028 (citing examples); *see also United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (holding the district court erred in finding the presence of the fifth *Griffin* factor where nine officers were involved in the search, but only two interviewed the suspect and "[c]ommunications between the agents and [defendant] consisted of two-way questioning" and photographs reflected a casual scene). In fact, the Eighth Circuit has indicated the key question is whether the questioning, not the execution of the warrant, is police dominated. *United States v. Wallace*, 323 F.3d 1109, 1113 (8th Cir. 2003). Finally, Defendant was not arrested at the end of the interview.

Accordingly, considering the totality of the circumstances, Defendant was not in custody for purposes of *Miranda*. Investigators were not required to *Mirandize* Defendant prior to questioning him on October 23, 2024, and thus, Defendant's motion to suppress should be denied.

For the reasons stated above,

IT IS HEREBY RECOMMENDED to the Honorable Susan M. Bazis, United States District Judge, that Defendant's motion to suppress, Filing No. 57, be denied in its entirety.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 10th day of July, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge